[Civ. No. 32056. Second Dist., Div. Three. Feb. 18, 1969.]

I. B. SUSMAN et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES et al., Defendants and Respondents.

Long & Levit, Bert W. Levit, John B. Hook, Gregory Archbald and Ronald E. Mallen for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, Marvin Goldsmith and Robert H. O'Brien, Deputy Attorneys General, Roger Arnebergh, City Attorney, John A. Daly, Assistant City Attorney, Arthur Y. Honda and Nowland C. Hong, Deputy City Attorneys for Defendants and Respondents.

FORD, P. J.—The plaintiffs have appealed from a judgment of dismissal entered after the general demurrers of the defendants City of Los Angeles and State of California to the plaintiffs' complaint as amended had been sustained with leave to amend (see rule 202(e), Cal. Rules of Court) and the plaintiffs had elected not to file another amended pleading. The action relates to the ''Watts' Riot'' of 1965.

In paragraph VIII of the first cause of action it was alleged that the plaintiffs were the owners of real and personal property in the City of Los Angeles as to which they suffered damage as follows: ''In August 1965, a crowd of men and women assembled in front of the premises owned by plaintiffs . . . and by mob action and in a riotous manner broke into and entered said premises, and removed, broke, and destroyed articles of personal property owned by plaintiffs and situated on such premises; and said crowd also set fire to plaintiffs' buildings, which fires consumed and destroyed the entire buildings, and the personal property remaining therein, and interrupted and destroyed the business of plaintiffs being conducted on said premises in an amount presently unknown but the total damage to plaintiffs' property is believed to be in excess of $69,000.00.'' That paragraph was incorporated by reference in each of the other causes of action.

The allegations of tortious conduct set forth respectively in the eleven causes of action of the complaint will be noted hereinafter.

██ In California all government tort liability is now dependent on statute. (Gov. Code, § 815; see Cobey, *The New California Goverenmental Tort Liability Statutes* (1964) 1 Harv.J.Legis. 16, 20; Van Alstyne, California Government Tort Liability (Cont.Ed.Bar 1964) § 5.6, p. 124.)[1] The Cali-

---

[1]Section 815 of the Government Code is as follows: ''Except as otherwise provided by statute:

''(a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.

''(b) The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any

fornia Tort Claims Act (Gov. Code, § 810 et seq.) governs the matter of government liability for damage caused by mob or riot. (See Van Alstyne, California Government Tort Liability (Cont.Ed.Bar 1964) § 2.15, p. 45.) Reference to pertinent sections of the California Tort Claims Act will be made in the course of the consideration of the several causes of action.

In view of the fact that tort causes of action against public entities are now based on statute, the general rule that statutory causes of action must be pleaded with particularity is applicable. Every fact essential to the existence of statutory liability must be pleaded. (Van Alstyne, California Government Tort Liability (Cont. Ed. Bar 1964) § 9.13, p. 422; see *Feingold* v. *County of Los Angeles,* 254 Cal.App.2d 622, 625 [62 Cal.Rptr. 396].)

While not involving an action under the California Tort Claims Act, the reasoning of the court in *Rubinow* v. *County of San Bernardino,* 169 Cal.App.2d 67 [336 P.2d 968], aptly expresses the necessity of pleading facts showing the existence of a duty and a breach thereof sufficient to sustain a recovery by the plaintiff. In *Rubinow* the plaintiffs alleged that the accident in which the death occurred was caused by the negligent driving of one Moore and that a deputy sheriff who was following the Moore automobile failed and neglected "to faithfully perform his duties, to stop and prevent the violation of the law being committed in his presence" by Moore. The plaintiffs based their contention of liability on statutory provisions relating to the duties of officers. In holding that the pleading was deficient in alleging facts which would place a duty on the officer to make an arrest, the court stated (169 Cal.App.2d, at page 71) : "It is perfectly true that, ordinarily speaking, negligence may be pleaded in general terms. [Citation.] But first a duty to act must be shown. [Citations.] It appears to us that in a case of the type here at hand there is at least some degree of discretion required to be exercised by the officer, and where that is true the facts which plaintiffs rely upon to place on the shoulders of the officer the duty to act should be sufficiently alleged so as to make that duty clear and unequivocal. This is a simple, ordinary rule of fairness. In the case at bar, the pleading does not allege facts from which the officer would necessarily know, even in the exercise of extraordinary diligence, that an offense was being committed. . . . Before the officer would be under any duty to act

defenses that would be available to the public entity if it were a private person."

in any way there must have been either actual or constructive knowledge of an offense committed in his presence, and there is nothing for the general allegation of negligence to attach to until the facts creating a duty are first set forth.''

We turn to the consideration of each cause of action as pleaded by the plaintiffs.

### The First Cause of Action

The core of the first cause of action is pleaded as follows: ''On or about the period from 11 August 1965 until 18 August 1965, defendants City of Los Angeles and State of California, by and through their employees defendants Does One through Two Thousand, did each and every one of them negligently and carelessly cause, aggravate, and incite a riot; which negligence and carelessness of each and every one of said defendants were the direct and proximate cause of the mob action and loss to plaintiffs described in . . . [paragraph VIII] above.''

The allegations of the first cause of action contain no showing of a duty to act which was breached. Section 845 of the Government Code relates to the matter of liability with respect to police protection and is as follows: ''Neither a public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service.''[2]

In section 818.2 it is provided: ''A public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law.''[3] Section 846 relates to the matter of arrest: ''Neither a public entity nor a public employee is liable for injury caused by the failure to make an arrest or by the failure to retain an arrested person in custody.''

---

[2]The Law Revision Commission Comment with respect to section 845 is as follows: ''This section grants a general immunity for failure to provide police protection or for failure to provide enough police protection. Whether police protection should be provided at all, and the extent to which it should be provided, are political decisions which are committed to the policy-making officials of government. To permit review of these decisions by judges and juries would remove the ultimate decision-making authority from those politically responsible for making the decisions.''

[3]Professor Van Alstyne has stated: ''A public entity is not liable for injuries caused by 'failing to enforce any law.' Govt C § 818.2. Public employees enjoy a similar immunity: They are not liable for injuries caused by 'failure to enforce an enactment.' Govt C § 821. 'Law' is broader in scope than 'enactment,' including not only statutes, ordinances, charter provisions, rules, and regulations, but also state and

It is manifest that the pleader did not allege facts essential to the existence of statutory liability. Consequently, the general demurrers of the State of California and the City of Los Angeles to the first cause of action were properly sustained.

### The Second Cause of Action

The question of the sufficiency of the second cause of action pleaded by the plaintiffs must be resolved in the light of the following allegations: "On or about 11 August 1965 defendant State of California, by and through its employees defendants Does One Thousand and One through One Thousand and Fifty, so negligently and carelessly executed the arrest of a person for drunk driving within the city limits of Los Angeles that a large and angry crowd assembled; and said defendants, together with the defendant City of Los Angeles, by and through its employees defendants Does One through Fifty, did each and every one of them negligently and carelessly fail to disperse the angry crowd which had assembled; and instead each and every one of the defendants negligently caused, aggravated and incited a riot, all of which negligence and carelessness was the direct and proximate cause of the mob action and loss to plaintiffs, described in . . . [paragraph VIII] of the First Cause of Action."

The allegation that there was an arrest "negligently and carelessly executed" fails to show the violation of any duty by the State of California. There is, of course, no assertion of any violation of the rights of the person arrested. The plaintiffs are third persons but the pleading contains no facts showing a duty as to them which had been breached.

In *Ne Casek* v. *City of Los Angeles,* 233 Cal.App.2d 131 [43 Cal.Rptr. 294], while we held that no cause of action was stated, the pleading therein set forth facts sufficient to show the nature of the duty which the plaintiff claimed was

*federal decisional law as far as applicable in California. Govt C §§ 810.6, 811. . . . The immunity in § 818.2 prevails over statutory entity liabilities that do not clearly indicate otherwise. Govt C § 815(b), 815.2(b). . . . For example, it supersedes the liability imposed by Govt C § 815.6 for failure to discharge a mandatory duty." (Van Alstyne, California Government Tort Liability (Cont. Ed. Bar 1964) § 5.46, p. 154.)*

*The comment of the Law Revision Commission with respect to § 818.2 is in part as follows: "This section would be unnecessary except for a possible implication that might arise from Section 815.6, which imposes liability upon public entities for failure to exercise reasonable diligence to comply with a mandatory duty imposed by an enactment. This section recognizes that . . . the discretion of law enforcement officers in carrying out their duties, should not be subject to review in tort suits for damages if political responsibility for these decisions is to be retained."*

breached.[4] ■ If in the case presently before us the plaintiffs meant to allege that a riot ensued because the persons witnessing the arrest did not approve of the manner in which the arrest was executed by the officers, it is to be noted that the plaintiffs alleged no facts showing that the formation of a mob and the inception of a riot constituted a risk reasonably to be perceived by the officers in making the arrest under the circumstances presented to them. Consequently, no breach of any duty was shown (see *Dillon* v. *Legg,* 68 Cal.2d 728, 739 [69 Cal.Rptr. 72, 441 P.2d 912]) which could be the basis for statutory liability.[5]

■ Insofar as it is alleged in the second cause of action that the State of California and the City of Los Angeles failed to disperse the crowd which had assembled, no cause of action was stated because, as noted in the discussion as to the first cause of action, a public entity is not liable for injury arising from a failure to provide sufficient police protection service (Gov. Code, § 845) or caused by a failure to enforce any law (Gov. Code, § 818.2). The remaining portion of the allegations, namely, that "the defendants negligently caused, aggravated and incited a riot" appears to be coupled with the allegation just discussed and is deficient for the same reason. But, if it is considered by itself, it is insufficient to state a cause of action because no facts are alleged to show the duty which the plaintiffs claim was violated by the public entity.

Because of the absence of the allegation of facts essential to the existence of statutory liability the general demurrers to the second cause of action were properly sustained.

---

[4]In *Ne Casek* the plaintiff alleged that she was injured when two persons who had been arrested and handcuffed escaped and collided with her on a public sidewalk. With respect to the question presented by the facts as alleged this court stated (233 Cal.App.2d, at page 134): "Applied to the case before us, this means that while a police officer may be protected as far as his decision not to make an arrest is concerned, it does not follow that, the decision to arrest having been made, he cannot be answerable in damages for the consequences of a careless execution of his decision. The question in each case must be whether or not the particular activity which is alleged to have been improperly performed, is to be classified as discretionary or ministerial."

[5]Section 820.4 of the Government Code is as follows: "A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment."

The Law Revision Commission Comment is: "This immunity, by virtue of Section 815.2, will inure to the benefit of the public entity employing the particular public employee. A similar immunity in almost identical language appears in the Federal Tort Claims Act."

## The Third Cause of Action

 In the third cause of action the pertinent allegations relating to liability are as follows: "On or about 11 August 1965, 12 August 1965, and 13 August 1965, defendant City of Los Angeles by and through its employees defendants Does Fifty-One through Two Hundred did each of them carelessly and negligently cause, aggravate and incite a riot, in that said defendant employees failed and refused to follow the directions and orders of their superior officers as to the manner of dispersing and controlling angry crowds which had assembled; and the said negligence and carelessness of each and every one of defendants was the direct and proximate cause of the mob action and loss to plaintiffs described in . . . [paragraph VIII] of the First Cause of Action."

A fair reading of those allegations leads to the conclusion that the core of the plaintiffs' assertion of liability is that the City of Los Angeles failed to provide sufficient police protection service in that certain employees failed and refused to carry out the orders of their superior officers. But we are here concerned with the liability of a public entity and, as discussed with respect to the first cause of action, section 845 of the Government Code grants a general immunity to public entities for failure to provide sufficient police protection. There is no statutory exception to the rule of immunity where the failure to provide such protection is due to the acts or omissions of subordinate employees such as are alleged in the third cause of action. Moreover, as hereinabove noted, it is provided in section 818.2 of the Government Code that a public entity is not liable for an injury caused by the failure to enforce any law.[6]

---

[6]Professor Van Alstyne has stated: "The immunity in § 818.2 prevails over statutory entity liabilities that do not clearly indicate otherwise. Govt C §§ 815(b), 815.2(b). . . . For example, it supersedes the liability imposed by Govt C § 815.6 for failure to discharge a mandatory duty. . . . Under case law prior to *Muskopf* [*Muskopf* v. *Corning Hospital Dist.*, 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457)], failure of public officials to enforce the law was uniformly regarded as nonactionable 'governmental' matter (even though negligent or otherwise wrongful) in the absence of a statute imposing liability. See, e.g., *Tomlinson* v. *Pierce* (1960) 178 CA2d 112, 2 CR 700 (failure of policeman to arrest motor vehicle driver known to be drunk); *Rubinow* v. *County of San Bernardino* (1959) 169 CA2d 67, 336 P2d 968 (semble); *Shipley* v. *City of Arroyo Grande* (1949) 92 CA2d 748, 208 P2d 51 (failure to enforce state statute requiring parallel rather than diagonal parking on city streets); *Campbell* v. *City of Santa Monica* (1942) 51 CA2d 626, 125 P2d 561 (failure to enforce ordinance prohibiting vehicular traffic on sidewalk). . . . The immunity for failure to enforce the law conferred by the California Tort Claims Act appears designed to ensure continu-

Since facts essential to the existence of statutory liability were not pleaded, the general demurrer of the City of Los Angeles to the third cause of action was properly sustained.

### The Fourth Cause of Action

The core of the fourth cause of action is as follows: "On or about 11 August 1965, 12 August 1965, and 13 August 1965, defendant City of Los Angles, by and through its employees defendants Does Two Hundred and One through Three Hundred, negligently and carelessly failed and refused to make any attempt to ascertain the cause or extent of the unrest in the portion of the community where the riots were taking place; and negligently and carelessly failed and refused to utilize intelligence officers of said Los Angeles Police Department; and negligently and carelessly failed and refused to employ accepted methods of police intelligence to ascertain the cause of the unrest and to ascertain the proper method for preventing said unrest from developing into a riot; and instead said defendants and each and every one of them negligently and carelessly caused, aggravated, and incited a riot, all of which negligence and carelessness was the direct and proximate cause of the mob action and loss to plaintiffs described in . . . [paragraph VIII] of the First Cause of Action."

This cause of action manifestly relates to measures which the city undertook or failed to undertake during the course of the rioting with respect to the furnishing of police protection service. As has been noted, the matters pleaded fall within the provisions as to immunity in section 845 of the Government Code. (See fn. 2 of this opinion.) Since the allegations fail to show the existence of facts essential to statutory liability the general demurrer of the City of Los Angeles to the fourth cause of action was properly sustained.

### The Fifth Cause of Action

The allegations of the fifth cause of action upon which the plaintiffs rely as showing liability of the City of Los Angeles are as follows: "On or about 12 August 1965, defendant City of Los Angeles, through its employees defendants Does Three Hundred and One through Three Hundred and Twenty, was contacted by certain Los Angeles County officials and responsible civic leaders who were recognized experts on

ation of the same immunity that previously was recognized." (Van Alstyne, California Government Tort Liability (Cont. Ed. Bar 1964) §§ 5.46-5.47, pp. 154-155.)

the problems and motivations of persons residing in the area of Los Angeles where the riots were taking place; and said County officials and civic leaders advised defendants of the cause of the rioting on 11 August 1965, and advised and informed defendants that rioting would be resumed if said officers of the Los Angeles City Police Department continued their negligent and careless behavior; that despite said information and advice, said defendants continued to behave in a negligent and careless manner, and each and every one of defendants negligently and carelessly caused, aggravated, and incited a riot, all of which negligence was the direct and proximate cause of the mob action and loss to plaintiffs described in . . . [paragraph VIII] of the First Cause of Action.''

As is the case with respect to the fourth cause of action, the immunity embodied in section 845 of the Government Code is applicable to the allegations of the fifth cause of action. Professor Van Alstyne has aptly stated: ''The policy underlying this immunity is clear: Decisions that must be made by responsible public officials concerning the extent of police protection service to be provided in a community are the kind of discretionary determinations that should not be subject to review in tort litigation.'' (Van Alstyne, California Government Tort Liability (Cont. Ed. Bar 1964) § 7.16, p. 298.)[7]

Since facts essential to the existence of statutory liability were not pleaded, the general demurrer of the City of Los Angeles to the fifth cause of action was properly sustained.

### The Sixth Cause of Action

The pertinent allegations of the sixth cause of action as to liability are as follows: ''On or about the evenings of 11 August 1965, 12 August 1965, and during and including all of 13 August 1965, large crowds of a hostile, riotous, and destructive nature assembled and constituted a grave threat to property owners; that defendant City of Los Angeles, by and through its employees Does Five Hundred and One through Six Hundred, negligently and carelessly failed and refused to employ accepted and standard methods of dispersing riotous crowds, including the use of effective, but harmless, tear gas; and instead said defendants and each of them negligently and

---

[7]In the same section (§ 7.16, p. 299) Professor Van Alstyne stated: ''In keeping with this immunity, the 1963 legislature also repealed concurrently the former statutory liability of cities and counties for property damage caused by mob or riot. See former Govt C §§ 50140-50145, repealed by Stats. 1963, ch. 1681, § 17, p. 3286 . . . .''

carelessly caused, aggravated, and incited said crowds to riot and destroy property; all of which was the direct and proximate cause of the mob action and loss to plaintiffs described in . . . [paragraph VIII] of the First Cause of Action.''

For the reasons which we have stated with respect to the fourth and fifth causes of action, in the sixth cause of action the plaintiffs have not alleged facts essential to the existence of statutory liability and, therefore, the general demurrer of the City of Los Angeles to the sixth cause of action was properly sustained.

### The Seventh Cause of Action

The paragraph of the seventh cause of action relating to liability is as follows: ''On or about the evening of 12 August 1965, large crowds of residents from the area of Los Angeles where the riots of 11 August 1965 had taken place assembled in the streets of said area, and said crowds were hostile, riotous, and destructive in nature and constituted a grave threat to property owners; that the nature, disposition, and threat of these crowds was overtly manifested to all those present, including many officers of the Los Angeles Police Department; that said police officer defendants Does Six Hundred and One through Eight Hundred, and each of them, negligently and carelessly failed and refused to communicate to their superior officers the seriousness, gravity, and imminent threat presented by the crowds; that the careless and negligent failure of the said defendants to advise their superiors of the seriousness, gravity and imminent threat of the situation prevented said superiors from learning that the situation could no longer be controlled by the Los Angeles City Police Department and Los Angeles County Sheriff's office, and that there was instead an urgent need for state aid; and said superiors were thereby prevented from calling for aid from the California National Guard; that said negligence and carelessness of each of said defendants was the direct and proximate cause of the mob action and loss to plaintiffs described in . . . [paragraph VIII] of the First Cause of Action.''

It is manifest that in the seventh cause of action the essence of the plaintiffs' claim is that they were furnished inadequate police protection service because of the specified acts or omissions of police officers. The calling of the California National Guard would, of course, have furnished further police protection service in the area of the rioting. But, for the reasons we have stated with respect to the third cause of action, the city

was immune from liability. Since in the seventh cause of action the plaintiffs failed to plead facts essential to the existence of statutory liability, the general demurrer of the City of Los Angeles to that cause of action was properly sustained.

## The Eighth Cause of Action

In their eighth cause of action the facts bearing on liability are pleaded by the plaintiffs as follows: "On the morning of 13 August 1965, the Lt. Governor of California, who was then acting as Governor of the State of California, was carelessly and negligently advised by the defendant City of Los Angeles, by and through its employees defendants Does Eight Hundred and One through Eight Hundred and Ten, that there would be no need for aid from the California National Guard at any time during that day; that in fact the situation was such that the California National Guard *was* needed at that time; and that as a result of said advice and relying on said advice and information, the Lt. Governor left Los Angeles and, consequently, when the Chief of Police of Los Angeles requested that the California National Guard be called, the Lt. Governor was out of town and a delay of many hours resulted in the calling of said Guard; that the aforementioned acts constitute negligence and carelessness on the part of each of said defendants, which negligence and carelessness were the direct and proximate cause of the mob action and loss to plaintiffs described in . . . [paragraph VIII] of the First Cause of Action."

Insofar as the question of liability on the part of the City of Los Angeles is concerned, the pleading shows that the purpose of seeking the aid of the National Guard was to implement the police protection service of the city. The conduct of the city, acting through its officials, came within the immunity embodied in section 845 of the Government Code. Consequently, the plaintiffs did not plead facts essential to the existence of statutory liability on the part of the City of Los Angeles.

Moreover, aside from the immunity of the city as a public entity expressed in section 845, the decision as to when the aid of the National Guard should be requested was within the discretion of the city officials and, consequently, no claim of liability as against the city could validly be based on the exercise of such discretion. (Gov. Code, §§ 820.2, 815.2.) [8]

---

[8]Section 820.2 is as follows: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or

818

Such a decision constitutes the type of basic policy decision that the Government Code seeks to insulate in section 820.2. ▮ As stated in *Johnson* v. *State of California,* 69 Cal.2d 782, at pages 793-794 [73 Cal.Rptr. 240, 447 P.2d 352]: "In drawing the line between the immune 'discretionary' decision and the unprotected ministerial act we recognize both the difficulty and the limited function of such distinction. As we said in *Lipman* v. *Brisbane Elementary Sch. Dist., supra,* 55 Cal.2d 224, 230 [11 Cal.Rptr. 97, 359 P.2d 465], 'it may not be possible to set forth a definite rule which would determine in every instance whether a governmental agency is liable.' A workable definition nevertheless will be one that recognizes that '[m]uch of what is done by officers and employees of the government must remain beyond the range of judicial inquiry.' (3 Davis, Administrative Law Treatise (1958) § 25.11, p. 484); obviously 'it is not a tort for government to govern' (*Dalehite* v. *United States* (1953) 346 U.S. 15, 57 [97 L.Ed. 1427, 1452, 73 S.Ct. 956] (Jackson, J., dissenting)). Courts and commentators have therefore centered their attention on an assurance of judicial abstention in areas in which the responsibility for *basic policy decisions* has been committed to coordinate branches of government. Any wider judicial review, we believe, would place the court in the unseemly position of determining the propriety of decisions expressly entrusted to a coordinate branch of government. Moreover, the potentiality of such review might even in the first instance affect the coordinate body's decision-making process. (See generally Jaffe, Judicial Control of Administrative Action, *supra,* 241, 259; James, *Tort Liability of Governmental Units and Their Officers, supra,* 22 U.Chi.L.Rev. 610, 651; Peck, *The Federal Tort Claims Act: A Proposed Construction of the Discretionary Function Exception, supra,* 31 Wash. L.Rev. 207, 240; Note, *The Discretionary Function Exception of the Federal Tort Claims Act, supra,* 66 Harv.L. Rev. 488, 489-490.)"

The reasoning of *Johnson* is, of course, particularly applicable to the allegations with respect to the acting Governor upon which plaintiffs seek to base a cause of action in tort against the State of California. ▮ When and under

omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

Section 815.2 is in pertinent part as follows: ". . . (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

what circumstances the National Guard should be called into action to preserve the peace and to protect property is a matter within the discretion of the Governor (Cal. Const., art. V, § 7; Mil. & Vet. Code, §§ 143, 146, 1580-1581; see former provision, Cal. Const., art. VIII, § 1, repealed Nov. 8, 1966) and, for the reasons expressed in *Johnson* as set forth hereinabove, is not open to judicial inquiry or review. Consequently, a cause of action against the State of California cannot arise from the alleged conduct of the acting Governor as set forth in the pleading herein involved.

The general demurrer of the City of Los Angeles and that of the State of California were properly sustained with respect to the eighth cause of action.

### *The Ninth Cause of Action*

The pertinent allegations of the ninth cause of action with respect to liability will be noted. Prior to the amendment consisting of the addition of a further paragraph (hereinafter set forth) it was alleged as follows: ''On 13 August 1965, the Lt. Governor of California, who was then acting as Governor of California, received a formal request from the City of Los Angeles to call out the California National Guard; that despite this request and despite the fact that the City of Los Angeles had been promised by the State officials that the National Guard would be called immediately if requested, the Lt. Governor negligently and carelessly failed and refused to call out said Guard until many hours later; that said negligent and careless actions of the Lt. Governor were the direct and proximate cause of the mob action and loss to plaintiffs described in . . . [paragraph VIII] of the First Cause of Action.''

For the reasons set forth with respect to the eighth cause of action, the decision as to when and under what circumstances the National Guard should be called into service to aid the City of Los Angeles by affording police protection service was one as to which discretion was placed in the acting Governor and his alleged delay in the exercise of that discretion is not a matter open to judicial inquiry or review. Furthermore, the discretion was that of the acting Governor and not that of ''State officials'' who are alleged to have made a promise that the National Guard ''would be called immediately if requested.'' But even if the acting Governor had himself made such a promise and had failed to comply therewith, the breach of such promise would not have been of legal signifi-

cance because the acting Governor could not validly bind himself in such a manner as would constitute a delegation to others, directly or indirectly, of the right to decide when and under what circumstances the National Guard should be called to duty in Los Angeles. That matter was one which was solely within the discretion of the acting Governor. (See 43 Am. Jur., Public Officers, § 295, p. 104.) Consequently, the allegations of the ninth cause of action as hereinabove noted did not set forth facts showing the existence of liability on the part of the State of California.

The amendment which was made to the ninth cause of action was the addition of the following paragraph: ''In reliance on the aforementioned promise that the National Guard would be called out immediately if requested, the City of Los Angeles refrained from seeking aid elsewhere and taking other measures which would have prevented the outbreak and spread of the aforementioned mob action. As a proximate result thereof, plaintiffs sustained damage and loss as described in . . . [paragraph VIII] of the first cause of action herein.''

For the reasons heretofore stated, the amendment did not result in a statement of facts sufficient to show liability on the part of the State of California. The matter of the exercise of discretion on the part of the acting Governor with respect to calling the National Guard into active service has been considered in the discussion as to the sufficiency of the eighth cause of action. The allegations with respect to the City of Los Angeles were in essence that the city, relying on a promise that the National Guard would be called out to aid in law enforcement, failed to take steps to obtain other means of police protection service. But, as has been set forth hereinabove, section 845 of the Government Code grants a general immunity to the city with respect to the alleged failure to provide sufficient police protection.

Since the ninth cause of action, including the amendment thereto, failed to show facts essential to the existence of statutory liability on the part of either the State of California or the City of Los Angeles, each general demurrer thereto was properly sustained.

### The Tenth Cause of Action

The allegations with respect to liability set forth in the tenth cause of action are as follows: ''On the morning of 13 August 1965, the Mayor and Chief of Police of the City of

Los Angeles decided it was necessary to call for the California National Guard in order to prevent rioting and property damage; that the Chief of Police, however, negligently and carelessly failed and refused to make a proper request for the National Guard until several hours later; and said Chief of Police, said Mayor, and defendants Does Eight Hundred and Eleven through Nine Hundred after having called for the National Guard negligently and carelessly failed and refused to plan for the integration and utilization of said Guard; that after said Guard was placed under the command and control of the Los Angeles Police Department, said Guard was not immediately deployed into the riot area, due to the negligent and careless failure of said defendants to plan for the utilization of the Guard; and that by the time the Guard was sent into the riot area, the riot had spread to a large area within the City of Los Angeles, including the area where the property of plaintiffs was located; that this negligence and carelessness on the part of each of said defendants were the direct and proximate cause of the mob action and loss to plaintiffs described in . . . [paragraph VIII] of the First Cause of Action.''

Again, the essence of the cause of action as pleaded is that the City of Los Angeles failed to provide sufficient police protection service. But, as has been noted hereinabove, section 845 of the Government Code affords a general immunity for failure to provide sufficient police protection. Particularly apt with respect to this cause of action is the Law Revision Commission Comment (see footnote 2 of this opinion) to the effect that the extent to which such police protection should be provided—in this case, with respect to the area where plaintiffs' property was located— is a political decision which is committed to the policy-making officials of government and that to ''permit review of these decisions by judges and juries would remove the ultimate decision-making authority from those politically responsible for making the decisions.'' Generally, such decisions are particularly difficult to make in the face of an unexpected public calamity.

Since the pleaded facts were not sufficient to show the existence of statutory liability the general demurrer of the City of Los Angeles to the tenth cause of action was properly sustained.

*The Eleventh Cause of Action*

In the eleventh and last cause of action pleaded, the

plaintiffs' allegations relating to liability are as follows: "On the morning of 13 August 1965, the Mayor of Los Angeles authorized the Chief of Police to call for the California National Guard in order to prevent rioting and property damage; that after having been advised of the seriousness of the situation and the urgent need for the California National Guard and after having instructed the Chief of Police to call for the California National Guard, said Mayor left Los Angeles and flew to San Francisco to make a speech; that this action of the Mayor in absenting himself from Los Angeles at a time of greatest crisis when there was a total failure of communication between State, City and County officials, and when there was a total failure of communication *within* the Los Angeles City Police Department, was negligent and careless; that said negligent and careless actions on the part of the Mayor of Los Angeles were the direct and proximate cause of the mob action and loss to plaintiffs described in . . . [paragraph VIII] of the First Cause of Action."

The general demurrer to this cause of action was that of the City of Los Angeles. While the pleading does not clearly disclose in what manner the duty claimed to have been breached caused the plaintiffs to suffer damage, it is a reasonable assumption that the pleader intended to show that the Mayor's absence from the city caused the plaintiffs to be deprived of adequate police protection for their property. But, as has been heretofore noted in this opinion, the general immunity afforded to the city by section 845 of the Government Code precludes recovery of damages by the plaintiffs resulting from the inadequacy of police protection service furnished to them. The general demurrer was properly sustained.

By declining to avail themselves of leave to amend further the plaintiffs took the position that whatever facts they might prove in support of their action were alleged in the complaint as amended and they voluntarily based their case upon the demurrers.[9] (See *O'Hara* v. *Los Angeles County Flood Control Dist.*, 19 Cal.2d 61, 64 [119 P.2d 23].)

The judgment is affirmed.

---

[9] In their opening brief the plaintiffs state: "Appellants [plaintiffs] elected to appeal rather than attempt further amendment. They contend the essential allegations have been fully pleaded and that sustaining of the demurrers below resulted from the basic legal error of the Superior Court in construing the California Tort Claims Act (Gov. Code, § 810, *et seq.*)."

Cobey, J., and Moss, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 17, 1969.